UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                                                    CRIMINAL NO. 3:16-CR-70-DPJ-LRA

CHARLIE LEE MARTIN

ORDER

Defendant Charlie Lee Martin has filed a Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A). Mot. [226]. The Government opposes his request. Because the Court concludes that Martin has not exhausted as required by § 3582(c)(1)(A), his motion is denied.

I.   Facts and Procedural History

In September 2016, a grand jury indicted Martin on three counts related to his involvement in a drug-trafficking conspiracy. In August 2017, Martin pleaded guilty to one count of possession with intent to distribute 500 grams or more of cocaine hydrochloride, and on December 12, 2017, the Court sentenced Martin to 130 months' incarceration. Martin, a 56-year-old African-American man, is serving his term of incarceration at the low-security Federal Correctional Institute in Oakdale, Louisiana ("FCI Oakdale-I").[1] According to the Bureau of Prisons website, his projected release date is December 12, 2025. Martin, who has high blood pressure, stage-three kidney disease, and asthma and is borderline diabetic, asserts that he is at high risk of complications in the event he contracts COVID-19. Fearing he may contract the virus if he remains incarcerated, Martin asks the Court to order a compassionate release.

---

[1] As of June 8, 2020, one inmate and 10 staff members at FCI Oakdale-I have active positive cases of COVID-19, and seven inmates have succumbed to the disease. One hundred eighty-three inmates and 10 staff members there have had and recovered from COVID-19.

II.      Analysis

Compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

While neither party disputes the mandatory nature of this exhaustion requirement, they do contest whether Martin exhausted as contemplated by the statute. The Government argues that Martin "fails to mention whether he has exhausted his administrative requirements" and that "BOP has no indication that [Martin] has, in fact, exhausted those remedies." Resp. [228] at 12. But Martin attached to his original motion an Inmate Request to Staff form addressed to Case Manager Dill and dated April 16, 2020, in which Martin asked "to be considered for release to home confinement for the remainder of [his] sentence" under 18 U.S.C. § 3582. Inmate Request [226-1] at 1. On April 21, 2020, a staff member responded in apparent denial: "You are a 29 point low risk." *Id.* Martin argues that because he made a compassionate-release request more than 30 days before he filed his motion, "[t]he 30-day requirement for exhaustion of administrative remedies has been met." Reply [234] at 7.

The Court has not yet had occasion to consider what constitutes exhaustion under § 3582(c)(1)(A). But the statute permits the Court to consider a motion for compassionate release filed by a defendant "after the defendant has fully exhausted all administrative rights to

2

appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).  So the statute sets up two exhaustion avenues:  full exhaustion of denial of a request that BOP file a compassionate-release motion on the defendant's behalf, or "the lapse of 30 days" from the date the defendant makes that request.  18 U.S.C. § 3582(c)(1)(A).

Because the Government ignored the Inmate Request to Staff form addressed to Case Manager Dill, the Court has no argument as to whether Martin's request satisfied § 3582(c)(1)(A).  But assuming that form qualified as a request *to the warden* that the BOP bring a compassionate-release motion on Martin's behalf under § 3582(c)(1)(A), that request was apparently denied on April 21, 2020.  There is no indication that Martin appealed or otherwise "fully exhausted" that denial.  *Id.*[2]  Instead, he contends that the statute's "lapse of 30 days" language is satisfied.  *Id.*

> Some courts
>
> have interpreted "lapse of 30 days from the receipt of such a request by the warden," 18 U.S.C. § 3582(c)(1)(A), to mean that the statute's exhaustion requirement is satisfied merely upon the passage of 30 days from the date the warden receives a defendant's request that the BOP file a compassionate release motion on [his] behalf, regardless of whether the BOP has failed to take action on the request.

---

[2] To "fully exhaust all administrative remedies" under § 3582(c)(1)(A), an inmate

> may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response.  An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. . . . Appeal to the General Counsel is the final administrative appeal.

28 C.F.R. § 542.15(a); *see United States v. Early*, No. 19-92, 2020 WL 2572276, at *2 (W.D. Pa. May 21, 2020).

*United States v. Ng Lap Seng*, No. 15-CR-706-VSB, 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020) (collecting cases). "Other courts have interpreted the 'lapse' language to require the passage of 30 days without BOP action on the request, in essence reading the language as a futility provision." *Id.* at *6 (collecting cases); *see Early*, 2020 WL 2572276, at *3 ("[A] defendant must wait to file a motion [under § 3582(c)(1)(A)] with this Court until either his administrative request related to compassionate release is denied and he fully exhausts all administrative rights to appeal or thirty days have passed from the date he made the application *with no response from the warden*, whichever occurs first." (collecting cases)).

Courts adopting the latter view have noted that the former interpretation "would substantially undermine one of the goals of the exhaustion requirement—protecting agency authority, expertise, and the opportunity to correct mistakes—'as it [would] allow[] a defendant to come to court before the agency has rendered a final decision' and foreclose higher-level BOP review of a request." *Ng Lap Seng*, 2020 WL 2301202, at *6 (quoting *United States v. Haney*, No. 19-CR-541-JSR, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020)). It "would also—in many cases—render the statute's provision regarding full exhaustion of administrative remedies meaningless, as defendants like [Martin] would forego appealing a warden's denial of their compassionate release request if the 30-day period was nearing an end." *Id.*

> If Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act. For example, in the very next subsection of the statute, Congress implemented a fourteen day deadline for the BOP to process a terminally ill defendant's request for compassionate release. *See* 18 U.S.C. § 3582(d)(2)(A)(iv) ("The Bureau of Prisons shall . . . in the case of a defendant diagnosed with a terminal illness . . . not later than 14 days of receipt of a request for a sentence reduction . . . , process the request.").

*Id.*

4

For the reasons articulated by the court in *Ng Lap Seng*, this Court agrees with those courts interpreting the "lapse" provision as having a futility component: it applies only when the BOP has failed to respond to a compassionate-release request within 30 days of its submission. If an inmate's request is denied before the lapse of 30 days, then he must fully exhaust administrative remedies before the Court may consider his motion to modify his sentence under the statute. In this case, Martin says his request was initially denied within the 30-day window, and he does not demonstrate that he fully exhausted that denial. In this procedural posture, the Court "may not modify [his] term of imprisonment." 18 U.S.C. § 3582(c)(1)(A).

III.  Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the foregoing reasons, Martin's Motion [226] is denied without prejudice for failure to exhaust. Martin may re-file his motion once he achieves one of the two avenues for exhaustion under § 3582(c)(1)(A).

**SO ORDERED AND ADJUDGED** this the 9th day of June, 2020.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE