UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                              CRIMINAL NO. 3:16-CR-70-DPJ-LGI

CHARLIE LEE MARTIN

ORDER

Defendant Charlie Lee Martin asks the Court to reconsider its previous denial of his
motion for compassionate release.  Mot. [241].  For the following reasons, the motion is denied.

I.       Facts and Procedural History

In September 2016, a grand jury indicted Martin on three counts related to his
involvement in a drug-trafficking conspiracy.  In August 2017, Martin pleaded guilty to one
count of possession with intent to distribute 500 grams or more of cocaine hydrochloride, and on
December 12, 2017, the Court sentenced Martin to a 130-month term of incarceration.  Martin, a
57-year-old African-American man, is serving his time at the low-security Federal Correctional
Institute in Oakdale, Louisiana ("FCI Oakdale-I").  According to the Bureau of Prisons (BOP)
website, Martin's projected release date is January 8, 2026.

Fearing he may contract COVID-19 if he remains incarcerated, Martin filed a motion for
compassionate release on May 20, 2020.  The Court denied that motion without prejudice,
concluding that Martin had not fulfilled 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement.
Order [235].  Martin now asks the Court to reconsider that decision, arguing that the Court's
interpretation of the exhaustion requirement involved a manifest error of law and is inconsistent
with the position the Government has taken in other cases.  The Government opposes Martin's
motion while also arguing that he is not entitled to compassionate release in any event.

II.      Standard

"The Fifth Circuit recognizes that, although there is no authority in the Federal Rules of Criminal Procedure for a 'motion for reconsideration,' its use has been 'repeatedly and expressly sanctioned' by the Supreme Court." *United States v. Presley*, No. 5:12-CR-2-DCB-FKB, 2013 WL 1980388, at *2 (S.D. Miss. May 13, 2013) (quoting *United States v. Cook*, 670 F.2d 46, 48 (5th Cir. 1982)).  "Motions to reconsider in criminal cases are treated like motions to reconsider in civil suits," and "[g]enerally, courts apply the standards of Rule 59(e) of the Federal Rules of Civil Procedure."  *Id.*

"A Rule 59(e) motion 'calls into question the correctness of a judgment.'"  *Templet v. HydroChem Inc.*, 367 F.3d 473, 478 (5th Cir. 2004) (quoting *In re Transtexas Gas Corp.*, 303 F.3d 571, 581 (5th Cir. 2002)).  "Rule 59(e) 'serve[s] the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence.'"  *Id.* at 479 (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989)).

III.      Analysis

As the Court noted in its earlier order, compassionate-release motions arise under 18 U.S.C. § 3582(c)(1)(A)(i), which provides:

> The court may not modify a term of imprisonment once it has been imposed except that . . . the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

The exhaustion requirements of this statute have been inconsistently construed. Some courts have found that the administrative procedures must be fully exhausted once the warden rejects a request, while others have concluded that an inmate may seek compassionate release 30 days after making his request to the warden, even if the warden acts within that time—i.e., there is no need to exhaust BOP's appellate process. *See United States v. Martin*, No. 3:16-CR-70-DPJ-LRA, 2020 WL 3065302, at *3 (S.D. Miss. June 9, 2020) (comparing constructions) (citing *United States v. Ng Lap Seng*, No. 15-CR-706-VSB, 2020 WL 2301202, at *5 (S.D.N.Y. May 8, 2020) (collecting cases)). Absent binding authority, this Court joined those requiring full exhaustion after a denied request.

In the seven months since that holding, the Fifth Circuit has not resolved the issue, though it was recently mentioned in *United States v. Ward*, No. 20-60665, 2020 WL 7755453, at *1–2 (5th Cir. Dec. 29, 2020). Like Martin, Ward argued that § 3582(c)(1)(A)(i) does not require full exhaustion of a denied request provided the inmate does not file his motion until 30 days after seeking relief from BOP. *Id.* at *2. But because Ward failed to wait 30 days, he never exhausted his claim under either construction. *Id.* The Fifth Circuit therefore had no need to resolve the issue. *Id.* It did, however, offer the following observation:

> Notably, the Third Circuit appears to have adopted [Ward's] construction of the statute, albeit with limited explanation. *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (per curiam) (reversing a district court that held that the defendant was required to fully exhaust his administrative remedies because the Bureau of Prisons responded to his request for compassionate release within the thirty day period and emphasizing that "the statute states that the defendant may file the motion thirty days after the warden receives his request"). *But see United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020) (explaining that § 3582(c)(1)(A) permits courts "to grant compassionate release on a prisoner's own request, provided that the prisoner first allowed the Bureau [of Prisons] to review the request and make a recommendation (or it let 30 days pass in *silence*)" (emphasis added)).

*Id.* at *2 n.1. It should be noted that the quoted language from *Gunn* is dicta because the government waived the exhaustion defense in that case. *Gunn*, 980 F.3d at 1179. Regardless, the Fifth Circuit has not construed § 3582(c)(l)(A)'s exhaustion requirement.

As the district court in *United States v. Smith* noted, "there's no doubt that [§ 3582(c)(1)(A)'s exhaustion requirement presents] a close call of statutory interpretation." No. 4:95-CR-19-LPR, 2020 WL 2487277, at *7 (E.D. Ark. May 14, 2020). Indeed, Martin offers some compelling arguments. But the Court's prior ruling in this case has been cited in over 30 other cases. Revisiting that analysis before the Fifth Circuit offers guidance would only add to the confusion, whereas Martin's motion fails anyway on the merits. *See United States v. Jefferson*, 831 F. App'x 685, 686 (5th Cir. 2020) (noting that exhaustion is not jurisdictional and avoiding exhaustion issue because "the case [was] easily resolved on the merits").[1]

Turning to the merits, the question is whether, "considering the factors set forth in [§] 3553(a)," "extraordinary and compelling reasons warrant" a reduction in Martin's sentence, "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

Before Congress authorized defendants to seek relief under § 3582(c) on their own behalves, the sentencing commission promulgated § 1B1.13 of the United States Sentencing Guidelines as the applicable policy statement. That section "essentially reiterates the requirements of § 3582(c)(1)(A), with the additional requirement that a defendant 'not be a danger to the safety of any other person or to the community.'" *United States v. Dunlap*, No.

---

[1] Unlike this case, the Government has agreed with Martin's construction in another matter before this Court. *See United States v. Mason*, 3:14-CR-114-DPJ-FKB, Gov't's Resp. [380] at 10 n.3 (conceding exhaustion and noting that "an inmate need not 'exhaust' administrative remedies if the motion is filed in court 30 days after receipt of a request by the warden"). The issue may therefore be moot in this district going forward.

1:02-CR-165-1, 2020 WL 2062311, at *1 (M.D.N.C. Apr. 29, 2020) (quoting U.S.S.G.

§ 1B1.13(2)).  And it contains application notes that "provide examples of extraordinary and

compelling reasons to grant a compassionate release[.]"  *Id.*  Application Note 1 states:

> Provided the defendant [is not a danger to the safety of any other person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant --
>
>> (i) The defendant is suffering from a terminal illness . . . .
>>
>> (ii) The defendant is [suffering from a health condition] that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B)  Age of the Defendant -- The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C)  Family Circumstances --
>
>> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>>
>> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D)  Other reasons -- As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Martin does not contend that his circumstances fall into subsections (A), (B), or (C).

Instead, he argues that, because the statute was amended after the guideline section was adopted,

there is no policy position applicable to motions for compassionate release filed by inmates.

Mot. [241] at 17 n.12.  As such, Martin says "the Court can determine whether any extraordinary

and compelling reasons . . . warrant granting relief."  *Id.* (quoting *United States v. Cantu*, 423 F.

Supp. 3d. 345, 352 (S.D. Tex. 2019)).  Martin argues that he meets that test because his medical conditions like uncontrolled hypertension and kidney disease make him more susceptible to serious complications from COVID-19.

The extent to which § 1B1.13 applies remains unclear in the Fifth Circuit.  *Compare United States v. Gowdy*, No. 20-60800, 2020 WL 7702579, at *2 (5th Cir. Dec. 28, 2020) (noting "open question of whether § 1B1.13 applies to motions for compassionate release"), *with United States v. Bell*, 823 F. App'x 283, 284 (5th Cir. 2020) (rejecting compassionate-release argument that was not "consistent with" Application Note 1 to § 1B1.13).  It is also unclear whether courts may now exercise the discretion reserved for BOP under subpart D of Application Note 1 and grant relief for "[o]ther reasons."  *See United States v. Thompson*, No. 20-40381, 2021 WL 37493, at *2 n.4 (5th Cir. Jan. 5, 2021) (noting split but declining to consider the issue).

Thus far, the Fifth Circuit has issued no published opinions on whether § 1B1.13 is binding, and its unpublished opinions have mostly avoided the issue by ruling on other grounds. *See, e.g.*, *Gowdy*, 2020 WL 7702579, at *2 (finding no need to decide open question whether § 1B1.13 is binding).  That said, two recent unpublished opinions from the Fifth Circuit stated that "[a]lthough not dispositive, the commentary to . . . § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *Thompson*, 2021 WL 37493, at *2 (citing *United States v. Rivas*, No. 20-10360, 2020 WL 6437288, at *2–3 (5th Cir. Nov. 2, 2020) (stating that "[t]hough not dispositive, we are guided in our analysis by the commentary for U.S. Sentencing Guidelines § 1B1.13")).

*Thompson* and *Rivas* comport with United States District Judge Louis Guirola's conclusion that "[r]egardless of whether the policy statement remains binding, it continues to provide helpful guidance for determining whether a defendant is entitled to compassionate

release." *United States v. Woods*, No. 1:17-CR-118-LG-JCG-2, 2020 WL 3452984, at *2 (S.D. Miss. June 24, 2020), *reconsideration denied*, 2020 WL 4318758 (S.D. Miss. July 27, 2020). Absent binding authority, the Court will follow that approach.

Here, Martin mentions several medical conditions and other demographics that place him in a high-risk category regarding COVID-19.  To begin, Martin argues that he has "uncontrolled hypertension."  Mot. [241] at 18.  Martin cites one clinical note from June 19, 2019, that does mention "HTN (uncontrolled)" as part of his medical history.  Med. R. [232] at 105.  But his records from 2020 describe him has merely having hypertension.  *See id.* at 1–44.  The Court frankly lacks the medical knowledge or information from the parties to know the difference between uncontrolled hypertension and hypertension.  Regardless, there is no dispute Martin receives several blood-pressure medications and is frequently monitored by healthcare providers. For example, Martin's brief lists 15 visits from February through May 2020.  *See* Mot. [241] at 20–21.  During those visits, he had two instances when his systolic reading exceeded the level for hypertensive crisis.  *See id.* (citing American Heart Association, Understanding Blood Pressure Readings, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings (last visited January 19, 2021)).  Overall, his systolic blood pressure ranged from 143 to 191, with a 164 average.  *See id*.  His diastolic blood pressure topped out at 108 and was recorded a low of 92; the average was 99.  *Id.*  According to the literature Martin cites, blood-pressure "ranges" of 140 over 90 to 180 over 120 reflect stage 2 hypertension.  *Id.* "At this stage of high blood pressure, doctors are likely to prescribe a combination of blood pressure medications and lifestyle changes."  American Heart Association, Understanding Blood Pressure Readings, https://www.heart.org/en/health-topics/high-blood-pressure/understanding-blood-pressure-readings (last visited January 19, 2021).

According to the Centers for Disease Control and Prevention (CDC), "people with [hypertension] *might* be at an increased risk for severe illness from COVID-19."  Centers for Disease Control, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited January 15, 2021) (emphasis added).

That Martin's hypertension "might" present an increased risk of illness is not—by itself—"extraordinary and compelling."  *Id.*; *see Thompson*, 2021 WL 37493, at *2 (affirming denial of compassionate release where defendant's "chronic illnesses [including hypertension] place[d] him at a higher risk of severe symptoms, should he contract COVID"); *Gowdy*, 2020 WL 7702579, at *2 (affirming denial of compassionate release based on hypertension and other ailments).

Martin also mentions kidney disease.  According to the CDC, "[p]eople of any age" with chronic kidney disease "are at increased risk of severe illness from COVID-19."  *See* Centers for Disease Control, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited January 15, 2021). Combined with the hypertension and other issues, the Court agrees that Martin is within that portion of the population that faces an increased risk for serious illness from COVID-19, though it is not clear how much greater the risk is.

On the other hand, Martin would have those same underlying health risks if released and could still face exposure. While the historical data on COVID-19 cases at FCI Oakdale-I show an early outbreak, conditions dramatically improved. Currently, none of the 876 inmates housed there has an active case of COVID-19.[2]  By comparison, Mississippi's numbers have never been higher. In short, Martin may be correct regarding comparative risks, but there is no way to predict what might happen if he is released and resumes the employment he says he would pursue.  Whether his conditions justify compassionate release presents a close call.

That said, § 3582(c)(1)(A)(i) provides that "*after* considering the factors set forth in section 3553(a) to the extent that they are applicable" the Court may grant relief "if it finds that . . . extraordinary and compelling reasons warrant such a reduction."  (Emphasis added).  Even considering Martin's valid concerns, the § 3553(a) factors tip the scale against modifying his sentence.[3]

---

[2] Both parties have relied on numbers BOP publishes on its website, and the Court will do the same.

[3] 18 U.S.C. § 3553(a) provides:

> The court, in determining the particular sentence to be imposed, shall consider—
>
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and

To begin, Martin has served just over four years—or well under half—of his 130-month sentence. *See Thompson*, 2021 WL 37493, at *3 (noting that "courts that granted compassionate release [to high-risk inmates] largely have done so for defendants who had already served the lion's share of their sentences"). Modifying Martin's term of incarceration from 130 months down to 52 months would not reflect the seriousness of Martin's participation in this large-scale drug-trafficking operation or provide just punishment for it.

In addition, Martin had 18 criminal-history points before the instant offense—five more than required for the maximum category VI—and was on probation for cocaine possession when he committed this offense. *See* PSR [161] ¶¶ 68–82. His criminal history spans three decades, and courts have on three occasions revoked supervised release. *Id.* Martin's extensive criminal history supports a sentence exceeding what he has served and reflects an ongoing need to protect the public from further crimes.

---

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;

(5) any pertinent policy statement—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code . . . ; and

(B) that . . . is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

For these same reasons, there remains a danger to the community.  Martin thinks otherwise and notes that he is now 57 (and therefore less likely to recidivate), has no violent offenses, and is now in a low-security facility.  Mot. [241] at 24.  Starting with his age, Martin was 53 when he committed the instant offense, so his age does not necessarily help.  And as for the rest, § 1B1.13 states that compassionate release may be granted only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  Among the relevant factors found in § 3142(g), the Court considers whether the crime involved a "controlled substance"; "the history and characteristics of the person," including "criminal history" and whether "the person was on probation" at the time of the offense; and the "nature and seriousness of the danger to any person or the community."  18 U.S.C. § 3142(g)(1)–(4).

These factors all weigh against Martin, who has a substantial criminal history and was on probation when he joined this drug-trafficking operation.  Moreover, Martin has been in and out of prison since 1983—including several extended terms—yet none of that curtailed his criminal conduct.  Given that history, the time Martin has served in this case is not enough to say he no longer presents a risk to the community of continued criminal conduct, violent or otherwise.  *See United States v. Walker*, No. 3:03-CR-30-HTW-JCS, 2020 WL 5899435, at *6 (S.D. Miss. Oct. 5, 2020) (observing that "[t]he safety of the community has been found to refer 'not only to the mere danger of physical violence but also to the danger that the defendant might engage in [any] criminal activity to the community's detriment'") (quoting *United States v. Mackie*, 876 F. Supp. 1489, 1491 (E.D. La. 1994)).

Finally, lowering Martin's sentence would create unwarranted sentencing disparities. When originally sentenced, Martin received the longest term among his co-defendants; lowering

the sentence to 52 months would give Martin the shortest.  The § 3553(a) factors do not support the sentence modification Martin requests.

IV.    Conclusion

These motions are all fact dependent and difficult.  Here, the Court might have viewed things differently had Martin presented more acute health conditions or if he had served most of his sentence.  But based on what he presents in his motion, including those arguments not directly addressed, he is not entitled to compassionate release.  His motion [241] is denied on the merits.

**SO ORDERED AND ADJUDGED** this the 20th day of January, 2021.

s/ *Daniel P. Jordan III*
CHIEF UNITED STATES DISTRICT JUDGE